IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA ZACHAREVSKAJA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 4542 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| MICHAEL CHERTOFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Barbara Zacharevskaja ("Plaintiff") has appealed to this court under the Administrative Procedures Act for review of a decision by the Administrative Appeals Office ("AAO") of the Citizenship and Immigration Services ("CIS"). The AAO affirmed the CIS' denial of Plaintiff's self-petition for immediate relative immigrant status. Plaintiff moved for summary judgment that the AAO decision should be reversed because the AAO incorrectly construed the statutory definition of "stepchild" in 8 U.S.C. § 1154(a)(1)(A)(iv) and 8 U.S.C. § 1101(b)(1). Defendants Michael Chertoff, Eduardo Aguirre, Robert Weimann, and Paul Novak (together "Defendants") have cross-moved for summary judgment that the AAO decision should be upheld as a proper interpretation of the underlying statute. Because this Court gives deference to an agency's reasonable interpretation of statutory language that the agency is authorized to interpret, the decision of the AAO is affirmed and Defendants' Motion for Summary Judgment is granted. The Court takes specific note of Defendants' subsequently-filed position that Plaintiff may be afforded relief through separate proceedings before the Immigration Court.

**Facts**

Plaintiff is a citizen and a native of Lithuania. Defendants' Submission of the Certified Administrative Record at 76 (hereafter "R. __"). She entered the United States on July 2, 1990, at the age of seven, in the company of her thirty-seven year old mother, Lioutsia Zacharevskaja ("Lioutsia"). R. 77, 93. The mother and daughter entered the United States at the invitation of Waclaw Zawadski ("Waclaw"), who responded to a letter from the mother seeking help for her daughter's asthma condition. R. 76-77, 87. Shortly after arrival, Lioutsia married Waclaw, then seventy-four years old. R. 93. The initial petition with the Immigration and Naturalization Service ("INS") for Lioutsia, filed by Waclaw, listed Plaintiff as "stepdaughter." R. 94-96. Waclaw registered Plaintiff on his health insurance and took her to a doctor for treatment of her asthma condition. R. 87.

Lioutsia, Waclaw, and Plaintiff lived in a four-unit building at 1040 N. Winchester St. in Chicago, IL. R. 87. According to Plaintiff, she had a strained relationship with both her mother and Waclaw. R. 47-52. Cook County records indicate that Waclaw received several citations for unsanitary conditions at the property and for building code violations, including rats, trash, pigeons, and general unkempt conditions and debris. R. 141-44. In January 1992, when Plaintiff was nine years old, Lioutsia and Waclaw were arrested for neglect of Plaintiff after authorities found her alone in an unsanitary apartment. R. 138. Approximately one year after the arrest for neglect, Plaintiff moved in with her neighbor, Michelle Whiting, who was appointed Plaintiff's guardian in 1994. R. 134, 175. After living with Ms. Whiting, Plaintiff moved in with Kay Jasiula in the Jefferson Park neighborhood. R. 52, 175. After 1994, Plaintiff did not live with her mother or with Waclaw. R. 52. In December 1999, Lioutsia and Waclaw divorced. R. 97.

**Procedural History**

When she was nineteen years old, Plaintiff filed an I-360 self-petition for a visa in late 2002, seeking classification as an immediate relative who had been abused by a U.S. citizen or permanent resident step-parent. R. 31-39. On September 4, 2003, the CIS denied Plaintiff's petition on the grounds that she could not show that she met the requirement that she "is the child of a citizen or lawful permanent resident of the United States." R. 34. The letter denying Plaintiff's petition stated that "in instances where the United States citizen or lawful permanent resident parent is the step-parent, the rule requires the self-petitioning child's parent to be legally married to the abuser within 2 years of the date of the filing of the petition." *Id.*

On October 3, 2003, Plaintiff appealed the denial of the I-360 to the AAO. R. 2. Plaintiff argued, among other things, that the 2000 revisions to the Violence Against Women Act ("VAWA"), 8 U.S.C. § 1101 *et. seq.*, invalidated the decision by the immigration officer at CIS. *See* R. 5-29. The AAO denied Plaintiff's appeal on May 26, 2004. *See* R. 173-76. In denying the petition, the AAO withdrew the CIS determination that a self-petitioning child must file the petition within two years of the divorce, but affirmed the CIS denial of petition on grounds that Plaintiff could not show any continuing familial relationship with Waclaw. *Id.*

Plaintiff filed suit in the district Court on July 9, 2004. After an initial review of the dispositive pleadings filed by the parties, the district court judge struck all motions and requested that the parties provide the Court with proof that jurisdiction in this district was proper, and with each party's position as to any alternate grounds provided by the AAO for denying the visa petition. The parties rebriefed the dispositive motions in this case, including jurisdictional arguments.

### **Limited Jurisdiction Exists to Review Statutory Interpretation**

This Court has the duty to consider subject matter jurisdiction *sua sponte* in every case, whether disputed by the parties or not. Fed. R. Civ. P. 12(h)(3). Plaintiff seeks review of the AAO's decision via the Administrative Procedures Act and federal question jurisdiction, 28 U.S.C. § 1331.

Agency actions are generally reviewable under federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 105. Except where federal statutes specifically preclude review, 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate."*Id.* at 105; *see also Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 56-57 (1993) (discussing the relationship between § 1331 and the APA). Defendants concede that this Court has jurisdiction to review pure questions of legal interpretation stemming from a final administrative agency action. Def. Br. at 4-5.

In this case, Plaintiff is disputing the AAO's interpretation of "stepchild" as used in sections 1154(a)(1)(A)(iv) and definition section 1101(b)(1) of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. §1101 *et seq*. (hereafter "IIRIRA"). Since IIRIRA contains a specific section stripping jurisdiction, the Court cannot address the question of statutory interpretation if that section applies to Plaintiff's case. *See Califano*, 430 U.S. at 104 (noting that review of agency action under § 1331 is limited by jurisdiction-precluding statutes); *see also See Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 687-88 (9th Cir. 2003) (addressing the effect of jurisdiction-stripping provision in IIRIRA on district court review of visa petitions).

**A. The statutory limitation on judicial review under IIRIRA does not apply.**

Section § 1252(a)(2)(B) of IIRIRA strips the federal courts of jurisdiction to review immigration decisions specified to be within the discretion of the Attorney General. Defendants agree with Plaintiff that in this particular case, § 1252(a)(2)(B) does not divest this Court of jurisdiction to review the AAO's construction of the term "stepchild." Def. Br. at 4-5, *citing Cuellar-Lopez v. Gonzalez*, 427 F.3d 492 (7th Cir. 2005).

Title 8 U.S.C. § 1252(a)(2)(B) covers judicial review of removal orders and specifically outlines the matters *not* subject to judicial review by federal courts. § 1252(a)(2)(B) states:

> Notwithstanding any other provision of law (statutory or nonstatutory). . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review. . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title [8 U.S.C. § 1151 *et seq.*] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under [8 U.S.C. § 1158(a)].

8 U.S.C. § 1252(a)(2)(B). The jurisdictional prohibitions in § 1252(a)(2)(B) are to be construed using three long-standing principles of statutory construction: (1) Congressional intent to limit federal jurisdiction must be clear and convincing in order to preclude judicial review; (2) a general presumption exists in favor of judicial review of administrative acts; and (3) ambiguities are ordinarily resolved in favor of the aliens in order to afford jurisdiction to hear their grievance. *Iddir v. INS*, 301 F.3d 492, 496-7 (7th Cir. 2002) (internal citations omitted).

Although usually applied in the context of removal actions, section § 1252(a)(2)(B)(ii) applies to review of visa petitions filed under § 1154. *See El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004) (clarifying that § 1252 applies by its terms to the entire subchapter, 8 U.S.C. §§ 1151

- 1378). The statute applies if the decision or action at issue is within the discretion of the Attorney General or Secretary of Homeland Security. A non-discretionary question of statutory interpretation falls outside § 1252(a)(2)(B)'s jurisdiction stripping rule. *Cuellar Lopez v. Gonzalez*, 427 F.3d 492, 493 (7th Cir. 2005), *citing Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004). *See also El-Khader v. Monica*, 366 F.3d 562, 568 (7th Cir. 2004) (judicial review of visa petition statues is precluded if the decision is discretionary in nature). In this case, the Court is presented purely with a question of statutory construction as to how the AAO construed the term "stepchild" in § 1154(a)(1)(A)(iv) and § 1101(b)(1), and the parties agree that the construction of the term "stepchild" forms a distinct basis for upholding or reversing the decision of the AAO.

B. Plaintiff has exhausted her administrative remedies for interpretation of § 1154(a)(1)(A)(iv) and § 1101(b)(1).

"Generally, an immigration plaintiff is required to pursue and exhaust all administrative remedies before seeking relief in federal court because there are explicit statutory requirements in certain sections of the INA and a comprehensive administrative review scheme exists." *Iddir*, 301 F.3d at 498. *See also Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000), *citing* 8 U.S.C. § 1252(d) (1999). Plaintiff alleges and Defendants concede that Plaintiff has exhausted all administrative remedies available to her for review of the agency's determination of the proper construction of § 1154(a)(1)(A)(iv). Plaintiff may, however, be subject to removal proceedings initiated by the Immigration courts. The initiation and completion of these proceedings is left to the executive branch and is beyond the jurisdiction of this Court pursuant to U.S.C. § 1252(b)(2).

## Standard of Review

"When a statute administered by a federal agency is unclear and the agency is authorized to interpret it, the agency's interpretation, unless unreasonable, may bind a reviewing court in accordance with *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984); *see also Krzalic v. Republic Title Co.*, 314 F.3d 875, 877 (7th Cir. 2002). Pursuant to 8 U.S.C. § 1103(a), the Department of Homeland Security has the authority to administer and enforce the IIRIRA, and has the authority to establish regulations. If there is no statute addressing the issue directly, and if Congressional intent is unclear, the Court reviews whether the agency's decision is based on a "permissible construction of the statute." *Ali v. Ashcroft*, 395 F.3d 722, 728 (7th Cir. 2005). Even if this Court disagrees with the construction adopted by the AAO, it does not have the authority to "substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*, *quoting Chevron*, 467 U.S. at 844. In keeping with *Chevron* deference, the judicial branch usually grants a significant degree of deference to the Executive Branch on immigration issues and the visa-granting process. *See INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999).

In light of *Chevron* deference, the Court reviews the AAO's decision for abuse of discretion and must defer to the AAO interpretation of "stepchild" *unless* (1) it was made without rational explanation; (2) it inexplicably departs from established policies; or (3) it rests on an impermissible basis. *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985) ("[T]his [test] comes as close as any reasonably short formula can to being a fair representation of the scope of judicial review."); *see also Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir. 1989).

## The Statutes

Title 8 U.S.C. § 1154(a)(1)(A)(iv) states, in relevant part:

> (iv) An alien who is the child of a citizen of the United States, or who was a child of a United States citizen parent who within the past 2 years lost or renounced citizenship status related to an incident of domestic violence, and who is a person of good moral character, who is eligible to be classified as an immediate relative under section 1151(b)(2)(A)(I) of this title, and who resides, or has resided in the past, with the citizen parent may file a petition with the Attorney General under this subparagraph for classification of the alien (and any child of the alien) under such section if the alien demonstrates to the Attorney General that the alien has been battered by or has been the subject of extreme cruelty perpetrated by the alien's citizen parent. For purposes of this clause, residence includes any period of visitation.

8 U.S.C. § 1154(a)(1)(A)(iv). The regulation promulgated by the agency to interpret this statute states more specifically:

> e) Self-petition by child of abusive citizen or lawful permanent resident--
> (1) Eligibility.
> (I) A child may file a self-petition under section [1154(a)(1)(A)(iv)] or [1154(a)(1)(B)(iii)] of the Act if he or she:
>
> (A) Is the child of a citizen or lawful permanent resident of the United States;
> (B) Is eligible for immigrant classification under section [1151(b)(2)(A)(I)] or [1153(a)(2)(A)] of the Act based on that relationship;
> © Is residing in the United States;
> (D) Has resided in the United States with the citizen or lawful permanent resident parent;
> (E) Has been battered by, or has been the subject of extreme cruelty perpetrated by, the citizen or lawful permanent resident parent while residing with that parent;
> (F) Is a person of good moral character; and
> (G) Is a person whose deportation would result in extreme hardship to himself or herself.
>
> (ii) Parent-child relationship to the abuser. The self-petitioning child must be unmarried, less than 21 years of age, and otherwise qualify as the abuser's child under the definition of child contained in section [1101(b)(1)] of the Act when the petition is filed and when it is approved. Termination of the abuser's parental rights or a change in legal custody does not alter the self-petitioning relationship provided the child meets the requirements of section [1101(b)(1)] of the Act.

8 C.F.R. § 204.2(e). Both of these statutes must be construed in light of 8 U.S.C. § 1101(b)(1), defining "child" under the Act:

> (b) As used in subchapters I and II of this chapter--
> (1) The term "child" means an unmarried person under twenty-one years of age who is--
> . . .
> (B) a stepchild, whether or not born out of wedlock, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred.

8 U.S.C. § 1101(b)(1)(B).

The parties disagree on whether Plaintiff is a "child" § 1154(a)(1)(A)(iv), as interpreted by regulation § 204.2(e), and as read in connection with § 1101(b)(1)(B) defining "child" to include "stepchild." On the basis of these statutes, the AAO concluded that Plaintiff was not eligible to petition as a child under § 1154(a)(1)(A)(iv) because the marriage creating the stepchild relationship terminated before the petition was filed, and because the evidence showed no continuing relationship with the stepparent.

To analyze the term "stepchild" under *Chevron*, the Court will adopt Congressional intent if Congress has directly spoken on the question at issue; if the Court determines that Congress has been silent on the particular issue, the court must defer to the interpretation of the agency if the interpretation is reasonable. *Chevron*, 467 U.S. at 843. Defendants urge this Court, on the basis of the above statutes and regulations, to find that Congress clearly intended that a "stepchild" as defined in § 1101(b)(1)(B) be a stepchild who is part of a legally cognizable stepparent-stepchild relationship at the time the self-petition is filed. In support of their position, Defendants point to the consistent use of the present tense with respect to a child's status in both the definition section and the sections applying the definition. In particular, Defendants point to § 1101(b)(1), defining "child" as a person who "IS. . . a stepchild"; §1154(a)(1)(A)(iv) allowing self-petition by "an alien who IS the child of a citizen of the United States;" and § 204.2(e) stating that "a child may file a self-petition under §

9

1154(a)(1)(A)(iv) . . if he or she IS the child of a citizen or lawful permanent resident. . .". Defendants argue that such consistent use of the present tense supports the argument that the child's current familial status was important to Congress at the time the statute was drafted. Defendants also point to the AAO's decision to cite *Matter of Katigback*, 14 I&N Dec. 45,49 (Comm. 1971) for the holding that "a petitioner must establish eligibility as of the date of filing the petition." R. 174-75.

In response, Plaintiff points to the first part of § 1154(a)(1)(A)(iv), permitting an alien to petition "who is the child of a United States citizen, or *who was a child of a United States citizen who within the past two years lost or renounced citizenship status related to an incident of domestic violence...*" (Emphasis added). In essence, Plaintiff asks the Court to conclude that because Congress used the phrase "was a child", Congress intended to recognize the existence of former parent-child (or stepparent-stepchild) relationships. The Court cannot agree with Plaintiff's expansive conclusion based on this phrase, however, because the context in which the phrase appears addresses the narrow circumstance in which the *parent* whose citizenship status would create the petitionable relationship on behalf of the child has left the United States. It does not address a decision by both parents to voluntarily end the legal basis for the petitionable relationship.

### The AAO's Interpretation of "Stepchild" is Reasonable

Defendants present strong support for their position that the definition of "stepchild" should be narrowly interpreted to include only persons in a current legal stepchild-stepparent relationship at the time of filing. However, while the AAO may have cited *Katigback*, the explanation provided by the AAO for its decision in fact allows for a broader interpretation of "stepchild" than that suggested by Defendants. The AAO specifically rejected the immigration offer's determination that the 2-year limitation for battered spouses should be applied to stepchildren as well, reasoning that

10

the 2000 amendments to VAWA added the 2-year limitation for *spouses* of abusers but added no such limitation for children of abusers. R. 175. The AAO then articulated a standard for assessing the eligibility of a former stepchild, stating that "the appropriate inquiry in cases where there has been a legal separation or where the marriage has been terminated by divorce or death is whether a family relationship has continued to exist as a matter of fact between the stepparent and stepchild and whether the parents had a bona fide marriage." R.175, *citing Matter of Mowrer*, 17 I&N Dec. 613 (BIA 1981); *Matter of Pagnerre*, 13 I&N Dec. 688 (BIA 1971).

Had the AAO taken the position advocated by Defendants that only present stepchildren are eligible, the standard set forth by the AAO later in its opinion would be irrelevant. Neither party disputes that the divorce between Plaintiff's mother and Waclaw occurred in 1999, three years before the petition was filed. Instead, the AAO's inquiry into the state of the familial relationship after the divorce indicates that the AAO found that there might be instances in which a former stepchild of a U.S. Citizen or permanent resident could file under § 1154(a)(1)(A)(iv), even if the qualifying marriage had terminated.

Plaintiff seeks to overturn the decision of the AAO using case precedent that an administrative agency may not add additional requirements to a statute. In this case, however, the AAO did not add additional and impermissible limitations to a statute; to the contrary, the AAO viewed a particularly harsh result under the plain language of the statute - that no former stepchild may petition under any circumstances, regardless of any mitigating factors - and relaxed the definition to allow limited discretionary review of the petitioning stepchild's circumstances. Plaintiff's argument that agency-created limitations are impermissible only succeeds under Plaintiff's original theory that once a stepchild relationship has been created, it never terminates. As discussed

11

above, that theory is negated by the plain language of the statutes and regulation governing self-petitions by battered children.

The AAO's decision to recognize that a former stepchild might maintain the relationship, despite a change in legal status beyond the stepchild's control, is a reasonable interpretation of §1101(b)(1) and § 1154(a)(1)(A)(iv) that adheres in general to the plain language of the statute but attempts to create some leeway for individual circumstances. Plaintiff argues without support that an interpretation of § 1154(a)(1)(A)(iv) that requires evidence of a continuing familial relationship goes against the Congressional basis for VAWA. But Plaintiff's proposed construction - that all stepchildren be children for purposes of self-petitioning as immediate relatives, even if the parent and the stepparent have voluntarily terminated the relationship, or the alien parent and citizen stepparent's marriage has been found to be a sham marriage - goes against the Congressional basis for requiring a bona fide marriage before allowing preferential admission of an alien and his or her family. The AAO relaxed an extremely harsh requirement that applied to minors in order to allow some discretion to allow additional filers in limited circumstances where a parental relationship continues after divorce, while not "redefin[ing] 'child' as that term has long been defined by statute and precedent decisions." R. 175.

After determining whether the AAO's construction of "stepchild" under these statutes is reasonable, the AAO's application of that standard to the facts of Plaintiff's case is within the AAO's discretion and outside this Court's jurisdiction under § 1252(b)(2). The evidence in the record is uncontested that Plaintiff had no relationship with Waclaw (and little to no relationship with her mother) in the five years leading up to the divorce and the three years between the divorce and the petition for immediate relative status.
12

**Conclusion**

The facts of Plaintiff's case are compelling, and although the Court has not had an opportunity, based on this limited review of the issue presented, to review all of the circumstances of Plaintiff's position in the United States, it appears that they will also be compelling in a removal proceeding. Plaintiff was a minor at the time these events occurred. Someone could have had a petition filed on her behalf, such as her mother, through a joint petition under § 1154(a)(1)(A)(iii), or her legal guardian through § 1154(a)(1)(A)(iv) while she remained a legal stepchild of Waclaw. Unfortunately, no one took that initiative on behalf of Plaintiff when the options were available. However, this Court's review of the AAO's decision is limited to a deferential review of the AAO's legal interpretations, and such review leads to the conclusion that the AAO reasonably - even generously - interpreted the law governing Plaintiff's status to petition.

Defendants voluntarily submitted to this Court a position paper as to Plaintiff's possible administrative remedies before the immigration courts in removal proceedings. This Court has no jurisdiction to review such proceedings, but makes specific note that Defendants have presented their position before this Court that the facts of Plaintiff's case make her a strong candidate for cancellation of removal and adjustment of status pursuant to 8 U.S.C. § 1229b(b)(2), "special rule for battered spouse or child." Defendants admit that this statute "specifically allows for a *past* parental relationship, and does not require that the alien *currently* is the child of the abuser parent." Def. Mem. Regarding Admin. Remedies at 5. Therefore, in spite of this Court's ruling, which does not afford her relief pursuant to this legal interpretation, Plaintiff may continue to seek relief in the immigration courts, where the entirety of the facts and merits of her claim may be addressed, including her past relationship with Waclaw and the circumstances of her childhood.

The Court affirms the decision of the AAO that Plaintiff does not qualify as a "stepchild" as defined in 8 U.S.C. § 1101(b)(1)(B) for purposes of applying for a visa pursuant to 8 U.S.C. § 1154(a)(1)(A)(iv). Plaintiff's Motion for Summary Judgment is denied, and Defendants' Motion for Summary Judgment is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 28, 2006